THE STATE OF NEW HAMPSHIRE

SUPERIOR COURT

NORTHERN DISTRICT OF HILLSBOROUGH COUNTY


I, W. Michael Scanlon, Clerk of the Superior Court of the State of New Hampshire, for the County of Hillsborough Northern District, the same being a court of record having a seal, and having custody of the records of the said Superior Court, do hereby certify that the attached is a true copy of the Notice of Removal to US District Court, the Complaint and all other pleadings in the in the action 216-2016-CV-273 Town of Peterborough v. Woodard & Curran, Inc., at this June Term, 2016 of said Superior Court.

In witness whereof I have hereunto
set my hand and affixed the seal
of said Superior Court this first
day of June, 2016.

*W. Michael Scanlon*

Clerk of Superior Court

## STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS.                    SUPERIOR COURT – NORTHERN DIVISION
                                     Docket No. 2016-CV-00273

| | |
|---|---|
| TOWN OF PETERBOROUGH, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| | ) |
| WOODARD & CURRAN, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

### NOTICE OF FILING NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446(d), Defendant, Woodard & Curran, Inc., hereby gives

notice that on May 19, 2016, it filed a Notice of Removal of this action in the United States

District Court for the District of New Hampshire. A copy of the Notice of Removal is attached

hereto. Pursuant to 28 U.S.C. § 1446(d), this action shall proceed no further in this Court unless

and until this action is remanded.

Respectfully submitted,
WOODARD & CURRAN, INC.
By its attorneys,

Jeffrey L. Alitz, NH Bar No. 4783
Eric A. Martignetti, NH Bar No. 20118
LeClairRyan, *A Professional Corporation*
One International Place, 11th Floor
Boston, MA 02110
617-502-8200
jeffrey.alitz@leclairryan.com
eric.martignetti@leclairryan.com

Dated: May 19, 2016

## CERTIFICATE OF SERVICE

I, Eric A. Martignetti, hereby certify that on May 19, 2016, I served a copy of the foregoing by first class mail on:

Robert M. Desrosier, Esq.
Donahue, Tucker & Ciandella, PLLC
225 Water Street
Exeter, NH 03833

_____
Eric A. Martignetti

19635.0398//18258492-1

2

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| TOWN OF PETERBOROUGH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WOODARD & CURRAN, INC., | ) |
| | ) |
| Defendant. | ) |

## **DEFENDANT, WOODARD & CURRAN, INC.'S NOTICE OF REMOVAL**

Defendant, Woodard & Curran, Inc. ("W&C"), by and through its attorneys, submits this Notice of Removal:

1.      Plaintiff, Town of Peterborough ("the Town") and W&C are parties to a civil action entitled *Town of Peterborough v. Woodard & Curran, Inc.*, Hillsborough Superior Court – Norther Division. Civil Action No. 2016-CV-00273.  W&C was served with the Summons and Complaint on April 26, 2016.  A copy of the Summons and Complaint is attached hereto as Exhibit A.

2.      This case is removable pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy is more than $75,000.

3.      The Town is a New Hampshire municipal corporation with a principal place of business in Peterborough, New Hampshire.  Compl., ¶ 1

4.      W&C is a corporation organized under the law of the State of Maine with a principal place of business in Portland, Maine.  Compl., ¶ 2.

5.      W&C entered into certain agreements with the Town to provide engineering services in connection with upgrading the Town's wastewater treatment facility and closing existing lagoons.  *See* Compl.. ¶ 11.  The Town alleges it has incurred and will continue to

Case 1:16-cv-00198   Document 1   Filed 05/19/16   Page 2 of 3

incur damages, including property damage and the inability to receive grant money to help pay for closing the lagoons, as a result of W&C's alleged breach of contract and negligence. *See* Compl., ¶ 57. Given these allegations, the Town has alleged damages that, more likely than not, exceed the amount in controversy of $75,000. *See Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 58, 64 (1st Cir. 1993) (holding that amount in controversy was "ample" in lawsuit brought by owner of hotel against general contractor, alleging negligence and breach of contract in connection with renovation and expansion of hotel).

6.     W&C desires to remove this action to the District of New Hampshire, which is the district court for the district within which the action is now pending. 28 U.S.C. § 1446(a).

7.     After the filing of this Notice of Removal, (a) W&C's counsel will give written notice of the filing of this Notice of Removal to the Town's counsel; (b) a copy of this Notice of Removal will be filed with the Clerk of the Hillsborough Superior Court – Northern Division; and (c) certified copies of the pleadings filed with the Hillsborough Superior Court – Northern Division will be filed with this Court.

WHEREFORE, W&C respectfully requests that this Honorable Court remove the action now pending in the Hillsborough Superior Court – Northern Division to this Court.

> Respectfully submitted,
> WOODARD & CURRAN, INC.
> By its attorneys,
>
>
> /s/ Eric A. Martignetti
> Jeffrey L. Alitz, NH Bar No. 4783
> Eric A. Martignetti, NH Bar No. 20118
> LeClairRyan, *A Professional Corporation*
> One International Place, 11th Floor
> Boston, MA 02110
> 617-502-8200
> jeffrey.alitz@leclairryan.com
> eric.martignetti@leclairryan.com

Dated: May 19, 2016

## CERTIFICATE OF SERVICE

   I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be send to those indicated as non registered participants on May 19, 2016

            /s/ Eric A. Martignetti

19635.0398//18253537.1



# NATIONAL
# CORPORATE
# RESEARCH, LTD.

### The Right Response at the Right Time, Every Time.

# Notice of
# Service of Process

SP395612
Page 1 of 1

Dover, DE • Los Angeles • Sacramento • Springfield, IL • Albany • New York

**850 New Burton Road, Suite 201, Dover, Delaware 19904**
**(302) 734-1450  Toll Free (866) 621-3524**
**Fax (800) 253-5177  Email: sop@nationalcorp.com**

**DATE:**    April 27, 2016

**TO:**    Bruce Nicholson, Esq.
Woodard & Curran, Inc.
41 Hutchins Dr.
Portland, ME 04102

**SENT VIA:**

☑ Email
☑ Federal Express
☐ Fascimile Transmission
☐ Other:
Tracking Number:
    776193044470

**RE:**    SERVICE OF PROCESS:
**WOODARD & CURRAN, INC.**

The enclosed Service of Process was received by the statutory agent in:  **New Hampshire**
on the date of:  **April 26, 2016**
received via:  **Personal Service**

TITLE OF ACTION:          Town of Peterborough  vs. WOODARD & CURRAN, INC.

COURT AND CASE NO:       In the Hillsborough Superior Court, New Hamsphire

Case No.    216-2016-CV-00273
Summons and Complaint

RESPONSE REQUIRED BY:    see documents

NOTE:

Sincerely,

*Andrew A. Lundgren* (signature)

Andrew Lundgren, Manager - Registered Agent Services

Please carefully review the document referenced above to confirm all information, including the Response Date, for accuracy.  The
information noted above is provided based on our review and is not a legal opinion.
**PLEASE CONSULT THE SERVICES OF A COMPETENT PROFESSIONAL ATTORNEY.**

Case 1:16-cv-00198   Document 1-1   Filed 05/19/16   Page 2 of 11

SERVICE COPY **THE STATE OF NEW HAMPSHIRE** SERVICE COP
**JUDICIAL BRANCH**
SUPERIOR COURT

Hillsborough Superior Court Northern District
300 Chestnut Street
Manchester NH  03101

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## SUMMONS IN A CIVIL ACTION

Case Name:      **Town of Peterborough v Woodard & Curran, Inc**
Case Number:    **216-2016-CV-00273**

Date Complaint Filed: April 13, 2016

A Complaint has been filed against Woodard & Curran, Inc in this Court. A copy of the Complaint is attached.

## The Court ORDERS that ON OR BEFORE:

| | |
|---|---|
| June 02, 2016 | Town of Peterborough shall have this Summons and the attached Complaint served upon Woodard & Curran, Inc by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| June 23, 2016 | Town of Peterborough shall file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | Woodard & Curran, Inc must file an Appearance and Answer or other responsive pleading form with this Court.  A copy of the Appearance and Answer or other responsive pleading must be sent to the party listed below and any other party who has filed an Appearance in this matter. |

**Notice to Woodard & Curran, Inc:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:
  Robert Michael Derosier, ESQ

Donahue Tucker & Ciandella PLLC
PO Box 630
Exeter NH  03833-0630

BY ORDER OF THE COURT

April 18, 2016

W. Michael Scanlon
Clerk of Court

(539)

NHJB-2678-S (10/23/2013)

THE STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS.                                                    SUPERIOR COURT
NORTHERN DIVISION

Town of Peterborough
1 Grove Street
Peterborough, New Hampshire 03458

v.

Woodard & Curran, Inc.
41 Hutchins Drive
Portland, Maine 04102

Docket No. _____

## COMPLAINT

This is a civil action for damages sustained by the Town of Peterborough.

### The Parties

1.      The Plaintiff, Town of Peterborough ("Peterborough") is a municipal corporation with an address of 1 Grove Street, Peterborough, New Hampshire 03458.

2.      The Defendant, Woodard & Curran Inc., ("Woodard & Curran") is a corporation organized under the laws of the State of Maine with a principal place of business of 41 Hutchins Drive, Portland, Maine 04102.   Woodard & Curran is an engineering company.

### Jurisdiction and Venue

3.      Jurisdiction is properly conferred by RSA 491:7.

4.      The Court has personal jurisdiction over Woodard & Curran because it conducted business within the State of New Hampshire, and has effected the actions complained of in Peterborough, New Hampshire which is within the jurisdiction of this state.

1

5.     Venue in this Court is proper because Peterborough's principal office and mailing address are in Peterborough, New Hampshire, and because the acts and omissions complained of took place in Hillsborough County.

## Statement of Facts

6.     Peterborough operates a wastewater treatment facility ("WWTF") which is located in Peterborough on the west side of the Contoocook River.

7.     At some time prior to the date of this lawsuit, Peterborough's WWTF consisted of a pump house and three large treatment lagoons which totaled 22.13 acres of surface area.

8.     In 2001, the New Hampshire Department of Environmental Services ("NHDES") indicated that it and the Environmental Protection Agency ("EPA") would re-open Peterborough's wastewater treatment facility national pollution discharge elimination system permit and adjust the effluent limits for phosphorus and ammonia and possibly total nitrogen.

9.     It was anticipated that NHDES's and the EPA's review of Peterborough's WWTF would result in future effluent limits which would be significantly lower than the effluent limits which then presently existed.

10.     To prepare for this eventuality, Peterborough retained Woodard & Curran to evaluate options for alternative effluent discharge strategies to meet the anticipated new limits.

11.     Peterborough and Woodard & Curran entered into a series of agreements and amendments thereto beginning in 2001 through 2013 to accomplish the tasks of evaluating alternative effluent discharge strategies, upgrading Peterborough's WWTF, and taking offline and properly closing the three existing lagoons.

12.     Peterborough and Woodard & Curran agreed that the project would be completed in two phases.

2

Case 1:16-cv-00198-LM   Document 1-1   Filed 05/09/16   Page 4 of 11

13.     The first phase would be to upgrade Peterborough's WWTF; and, once the new WWTF came online, the second phase would be to take the three lagoons offline and properly close them so that Peterborough could use this land for other functions.

14.     As part of the promised engineering, design, administrative, and consulting services, Woodard & Curran agreed to prepare applications and other associated documents to assist Peterborough in securing grants or loans by federal, state, and other grant or loan agencies.

15.     In 2005, Woodard & Curran advised Peterborough that the most cost effective strategy for closing the three lagoons was to excavate the lagoon berms into the lagoons and mix the sludge and berm topsoil together to create a vegetative layer, if the nitrate levels from the monitoring wells were below 10 PPM.

16.     Woodard & Curran advised Peterborough that the monitoring wells showed nitrate levels below 10 PPM, so the proposed lagoon closing strategy was appropriate.

17.     Woodard & Curran also advised Peterborough that the cost to close all three existing lagoons with minimal grading was $579,000.00.

18.     To pay for the new WWTF and to close the three lagoons, the residents of Peterborough approved Article 7 of the Town Warrant in 2006 which had set a gross project cost of $10,320,000.00.

19.     Article 7 authorized Peterborough to borrow up to $8,320,000.00, and in addition authorized the selectmen to appropriate or expend from the Town's general fund balance $1,000,000.00, and to receive at least $1,000,000.00 in grant money from the U.S. Department of Agriculture Rural Development ("Rural Development").

20.     The total grant from Rural Development and NHDES, following the approval of Article 7, was estimated to be $5,320,000.00.

3

21.     After approving Article 7, NHDES updated flow requirements to be handled by the new WWTF and this change resulted in a redesign of the WWTF and additional project costs.

22.     In 2008, Peterborough petitioned the Superior Court to hold a Special Town Meeting to address the new costs estimates for the new WWTF.

23.     At the Special Town Meeting held in September of 2008, the residents of Peterborough approved an increase of $3,023,000.00 for the project which increased the total projected cost of the new WWTF to $13,343,000.00.  To offset this increase in cost, Peterborough updated its requests for grants to Rural Development and NHDES.

24.     Based upon the higher costs for the WWTF, Rural Development increased its grant to Peterborough.  The estimated grant offer totaled $5,688,000.

25.     Once the new WWTF came online in July of 2012, the three existing lagoons were no longer needed and Woodard & Curran presented a formal engineering proposal for the closure of the lagoons in September of 2012.

26.     In September of 2012, Woodard & Curran advised Peterborough that in order to evaluate the most appropriate method for closing the lagoons, data needed to be collected which characterized the sludge quality and volume in the lagoons and the groundwater.

27.     Woodard & Curran advised Peterborough the data collected would support sound decisions on dewatering the impoundments; managing the bottom sludge; odor control; deconstructing the earthen dike system; creation of wetland; and filling and grading the lagoon areas.

28.     In 2012, Woodard & Curran advised Peterborough that it anticipated the wetland creation and the closure of all three lagoons would cost approximately $750,000.00.

DONAHUE, TUCKER & CIANDELLA, PLLC – ATTORNEYS AT LAW
OFFICES IN EXETER, PORTSMOUTH AND MEREDITH, NEW HAMPSHIRE – 800-566-0506 – WWW.DTCLAWYERS.COM

Case 1:16-cv-00198   Document 1-1   Filed 04/19/16   Page 7 of 11

29.   In its formal engineering proposal to Peterborough in September of 2012, Woodard & Curran stated that the groundwater level and sludge information were important to know for determining how to transition the lagoons to closure.

30.   In its formal engineering proposal provided to Peterborough in September 2012, Woodard & Curran admitted that it did not know the quantity of sludge in each of the three lagoons.

31.   In its formal engineering proposal provided to Peterborough in September 2012, Woodard & Curran admitted that it did not have any readily available data regarding groundwater levels.

32.   In its formal engineering proposal provided to Peterborough in September 2012, Woodard & Curran admitted that, though, it had completed a preliminary analytical review of a sludge sample from 2003, it had not characterized the chemical composition of the sludge.

33.   In February of 2013, Woodard & Curran measured the sludge depth in the three lagoons and collected sludge samples.

34.   Woodard & Curran determined that the average sludge thickness in lagoon one was .1 of a foot; in lagoon two 1.0 foot; and in lagoon three 0.7 of a foot.  The chemical composition of the sludge was also analyzed at that time.

35.   In May of 2013, Woodard & Curran established four monitoring wells near the lagoons for the purpose of estimating groundwater levels.

36.   Based upon the data from the monitoring wells, Woodard & Curran concluded that the lagoons were hydraulically connected to the groundwater table.

37.   Woodard & Curran also stated that its conclusion that the lagoons were hydraulically connected to the groundwater table was supported by the observation that when

5

water was pumped out of lagoons two and three in February 2012, lowering their water levels by four feet, the water level returned in a matter of days.

38.     Woodard & Curran estimated that the water volume which returned over those days was in excess of ten million gallons.

39.     In October of 2013, Woodard & Curran presented its lagoon decommissioning report to Peterborough.

40.     In its lagoon decommissioning report, Woodard & Curran stated that the lagoon fill approach (blending the containment berm soil with sludge and then using the blended material to grade the site) which was first proposed in 2005 and which Peterborough relied upon for setting the costs for the WWTF upgrade project and for passing and amending Article 7, and which Peterborough relied upon for applying to and receiving grant funding from Rural Development and NHDES, was no longer possible because of the subsequent identification of lagoon dewatering difficulty and the regulatory constraints for use of the sludge as a reclamation material.

41.     After receiving Woodard & Curran's lagoon decommissioning report and its recommendations and findings, Peterborough could only, based upon the remaining money available to pay for the upgrade project to the WWTF, close lagoon one.

42.     Woodard & Curran estimated the cost to close lagoon one to be $588,000.00.

43.     In 2014, the process to close lagoon one was started.

44.     After the water in lagoon one was drawn down, it was discovered that the sludge in lagoon one was not one inch thick as Woodard & Curran reported in 2013, but more than twenty inches thick.

DONAHUE, TUCKER & CIANDELLA, PLLC – ATTORNEYS AT LAW
OFFICES IN EXETER, PORTSMOUTH AND MEREDITH, NEW HAMPSHIRE – 800-566-0506 – WWW.DTCLAWYERS.COM

Case 1:16-cv-00198   Document 1-1   Filed 05/19/16   Page 9 of 11

45.     Peterborough removed that sludge, which is currently stored on site, and filled in lagoon one with approximately 70,000 cubic yards of material.

46.     The cost to close lagoon one was over $1,000,000.00.

47.     At present, lagoons two and three are not closed.

48.     Peterborough is obligated to close lagoons two and three and to remove the sludge which has accumulated in the lagoons.

49.     Peterborough no longer qualifies for Rural Development grant money to pay for a significant portion of the costs for properly closing lagoons two and three.

## COUNT I

### Breach of Contract

50.     Peterborough realleges the allegations contained in the foregoing paragraphs and incorporates those allegations by reference as if fully restated herein.

51.     Woodard & Curran entered into written contracts to provide services to Peterborough and Woodard & Curran breached its contracts.

52.     As a result of Woodard & Curran's breach, Peterborough has suffered and will continue to suffer damages, including but not limited to the inability to receive grant money to help pay for the closure of lagoons two and three, and property damage, for which Woodard & Curran is liable to Peterborough.

53.     WHEREFORE, Peterborough prays that, after trial, a judgment be entered in its favor against Woodard & Curran and that damages be awarded to Peterborough in an amount to be determined at trial, plus interest, attorney fees, and costs all within the jurisdiction of this Court.

DONAHUE, TUCKER & CIANDELLA, PLLC - ATTORNEYS AT LAW
OFFICES IN EXETER, PORTSMOUTH AND MEREDITH, NEW HAMPSHIRE - 800-566-0506 - WWW.DTCLAWYERS.COM

Case 1:16-cv-00198   Document 1-1   Filed 05/19/16   Page 11 of 11

Respectfully submitted,

TOWN OF PETERBOROUGH
By its attorneys:

DONAHUE, TUCKER & CIANDELLA, PLLC

Date: 12 April 2016          By: _Robert M. Derosier_____

Robert M. Derosier, Esquire
NHB #9979
225 Water Street
Exeter, NH 03833
603-778-0686
rderosier@dtclawyers.com

S:\PA-PL\Peterborough,Town of\Woodard & Curran\litigation\2016 04 12 Complaint.docx

DONAHUE, TUCKER & CIANDELLA, PLLC – ATTORNEYS AT LAW
OFFICES IN EXETER, PORTSMOUTH AND MEREDITH, NEW HAMPSHIRE · 800-566-0506 · WWW.DTCLAWYERS.COM

JS 44  (Rev. 11/15)    CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Town of Peterborough | Woodard & Curran, Inc. |

| (b)  County of Residence of First Listed Plaintiff    Hillsborough (NH)<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant    Cumberland (ME)<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED |
| (c)  Attorneys *(Firm Name, Address, and Telephone Number)*<br>Robert M. Derosier, Esq.<br>Donahue, Tucker & Ciandella<br>225 Water Street<br>Exeter, NH 03833 (603) 778-0686 | Attorneys *(If Known)*<br>Jeffrey L. Alitz and Eric A. Martignetti<br>LeClairRyan<br>One International Place, 11th Floor<br>Boston, MA 02210 (617) 502-8200 |

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1   U.S. Government<br>Plaintiff | ☐ 3   Federal Question<br>*(U.S. Government Not a Party)* |
| ☐ 2   U.S. Government<br>Defendant | ☒ 4   Diversity<br>*(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br> & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br> Student Loans<br> (Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br> of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☒ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br> Liability<br>☐ 320 Assault, Libel &<br> Slander<br>☐ 330 Federal Employers'<br> Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br> Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br> Product Liability<br>☐ 360 Other Personal<br> Injury<br>☐ 362 Personal Injury -<br> Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br> Product Liability<br>☐ 367 Health Care/<br> Pharmaceutical<br> Personal Injury<br> Product Liability<br>☐ 368 Asbestos Personal<br> Injury Product<br> Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br> Property Damage<br>☐ 385 Property Damage<br> Product Liability | ☐ 625 Drug Related Seizure<br> of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br> 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC<br> 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br> Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br> Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br> Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br> Accommodations<br>☐ 445 Amer. w/Disabilities -<br> Employment<br>☐ 446 Amer. w/Disabilities -<br> Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br> Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br> Conditions of<br> Confinement | ☐ 710 Fair Labor Standards<br> Act<br>☐ 720 Labor/Management<br> Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br> Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br> Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br> Actions | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br> or Defendant)<br>☐ 871 IRS—Third Party<br> 26 USC 7609 | ☐ 896 Arbitration<br>☐ 899 Administrative Procedure<br> Act/Review or Appeal of<br> Agency Decision<br>☐ 950 Constitutionality of<br> State Statutes |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
Plaintiff alleges negligence and breach of contract with respect to Defendant's engineering services.

| **VII. REQUESTED IN COMPLAINT:** | ☐ CHECK IF THIS IS A CLASS ACTION<br>UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND:    ☒ Yes    ☐ No |
|---|---|---|---|

**VIII. RELATED CASE(S)**
**IF ANY**    *(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE    5/19/16    SIGNATURE OF ATTORNEY OF RECORD    *Eric Martignetti*

FOR OFFICE USE ONLY

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____

THE STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS.                                    SUPERIOR COURT
NORTHERN DIVISION

Town of Peterborough

v.

Woodard & Curran, Inc.

Docket No. 216-2016-CV-00273

**AFFIDAVIT OF ROBERT M. DEROSIER**

I, Robert M. Derosier, being first duly sworn, depose and state as follows:

1.      I am the attorney for the plaintiff in the above-entitled matter.

2.      Filed herewith is the original Summons and Complaint (the "Complaint").  The Complaint has been served upon the defendant pursuant to RSA 510:4, as follows:

a.      On April 26, 2016, a true copy of the Complaint together with a fee of $10.00 was delivered to the Secretary of State of the State of New Hampshire as evidenced by the Sheriff's return on the service of process filed with the Order;

b.      On April 27, 2016, I sent a letter and process to the defendant's registered agent by certified mail, return receipt requested and via first class mail.  Attached hereto, marked **Exhibit A**, is a true copy of that letter.

c.      On April 27, 2016, I sent a letter and process to the defendant, Woodard & Curran, to its place of business at 41 Hutchins Drive, Portland, Maine 04101 by certified mail, return receipt requested and via first class mail.  Attached hereto, marked **Exhibit B**, is a true copy of that letter.

d.      The defendant, Woodard & Curran, received the certified mail notice on May 2, 2016.  Attached hereto, marked **Exhibit C**, is the original return receipt.

e.      The defendant's registered agent in Maine received the certified mail notice on April 29, 2016.  Attached hereto, marked **Exhibit D**, is the original return receipt.

Further affiant sayeth naught.

Date _____          _____
                                       Robert M. Derosier, Esquire

1

**DONAHUE, TUCKER & CIANDELLA, PLLC – ATTORNEYS AT LAW**
OFFICES IN EXETER, PORTSMOUTH AND MEREDITH, NEW HAMPSHIRE - 800-566-0506 - WWW.DTCLAWYERS.COM

STATE OF NEW HAMPSHIRE
COUNTY OF ROCKINGHAM

Subscribed and sworn to before me this 10th day of May, 2016 by
_Robert N. Derosier_ .

~~Justice of the Peace~~/Notary Public

2

**DONAHUE, TUCKER & CIANDELLA, PLLC — ATTORNEYS AT LAW**
OFFICES IN EXETER, PORTSMOUTH AND MEREDITH, NEW HAMPSHIRE — 800-566-0506 — WWW.DTCLAWYERS.COM

# EXHIBIT A



**Lawyers**

*Dedicated to Clients*

*CELEBRATING 30 YEARS OF SERVICE TO OUR CLIENTS*

MICHAEL J. DONAHUE
CHARLES F. TUCKER
ROBERT D. CIANDELLA
LIZABETH M. MACDONALD
JOHN J. RATIGAN
DENISE A. POULOS
ROBERT M. DEROSIER
CHRISTOPHER L. BOLDT
SHARON CUDDY SOMERS
DOUGLAS M. MANSFIELD
KATHERINE B. MILLER
CHRISTOPHER T. HILSON
JUSTIN L. PASAY
NICOLE L. TIBBETTS
ERIC A. MAHER

OF COUNSEL
NICHOLAS R. AESCHLIMAN

RETIRED
ROBERT B. DONOVAN

ROBERT A. BATTLES
(1951-2010)

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED/FIRST CLASS MAIL**

April 27, 2016

Christopher E. Howard, Esquire
Pierce Atwood LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101

   Re: **Town of Peterborough v. Woodard & Curran, Inc.**
     **Docket No. 216-2016-CV-00273**


**NOTICE OF SERVICE OF PROCESS**
**PURSUANT TO NEW HAMPSHIRE RSA 510:4**

Dear Sir or Madam:

  I represent the Town of Peterborough. Enclosed is a Summons and Complaint in regard to the above-referenced matter.

  Copies of this process were previously served upon the New Hampshire Secretary of State on April 26, 2016, pursuant to RSA 510:4, and this notice is sent to you to complete service upon you as Registered Agent of the defendant, Woodard & Curran, Inc.

       Very truly yours,

       DONAHUE, TUCKER & CIANDELLA, PLLC

       Robert M. Derosier
       rderosier@dtclawyers.com

RMD:nes
Enclosure
cc: Town of Peterborough
S:\PA-PL\Peterborough,Town of\Woodard & Curran\Corres & Memos\2016 04 27 Notice to Registered Agent of Def.4Service of Process.doc

DONAHUE, TUCKER & CIANDELLA, PLLC
Exeter Office: 225 Water Street, P.O. Box 630, Exeter, NH 03833, 603-778-0686
Portsmouth Office: 111 Maplewood Avenue, Suite D, Portsmouth, NH 03801, 603-766-1686
Meredith Office: Towle House, Unit 2, 164 NH Route 25, Meredith, NH 03253, 603-279-4158
www.dtclawyers.com

# EXHIBIT B



**DTC**
Lawyers
*Dedicated to Clients*

MICHAEL J. DONAHUE
CHARLES F. TUCKER
ROBERT D. CIANDELLA
LIZABETH M. MACDONALD
JOHN J. RATIGAN
DENISE A. POULOS
ROBERT M. DEROSIER
CHRISTOPHER L. BOLDT
SHARON CUDDY SOMERS
DOUGLAS M. MANSFIELD
KATHERINE B. MILLER
CHRISTOPHER T. HILSON
JUSTIN L. PASAY
HEIDI J. BARRETT-KITCHEN
NICOLE L. TIBBETTS
ERIC A. MAHER
DANIELLE E. FLORY

OF COUNSEL
NICHOLAS R. AESCHLIMAN

ROBERT A. BATTLES
(1951-2010)

*CELEBRATING OVER 30 YEARS OF SERVICE TO OUR CLIENTS*

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED/FIRST CLASS MAIL**

April 27, 2016

Woodard & Curran, Inc.
41 Hutchins Drive
Portland, ME 04102

Re:    **Town of Peterborough v. Woodard & Curran, Inc.**
       **Docket No. 216-2016-CV-00273**

**NOTICE OF SERVICE OF PROCESS**
**PURSUANT TO NEW HAMPSHIRE RSA 510:4**

Dear Sir or Madam:

I represent the Town of Peterborough. Enclosed is a Summons and Complaint in regard to the above-referenced matter.

Copies of this process were previously served upon the New Hampshire Secretary of State on April 26, 2016, pursuant to RSA 510:4, and this notice is sent to you to complete service upon you as defendant.

Very truly yours,

DONAHUE, TUCKER & CIANDELLA, PLLC

Robert M. Derosier
rderosier@dtclawyers.com

RMD:nes
Enclosure
cc:    Town of Peterborough
S:\PA-PL\Peterborough,Town of\Woodard & Curran\Corres & Memos\2016 04 27 Notice to Def 4Service of Process.doc

DONAHUE, TUCKER & CIANDELLA, PLLC
225 Water Street, P.O. Box 630, Exeter, NH 03833

111 Maplewood Avenue, Suite D, Portsmouth, NH 03801

Towle House, Unit 2, 164 NH Route 25, Meredith, NH 03253

1-800-566-0506        83 Clinton Street, Concord, NH 03301        www.dtclawyers.com

# EXHIBIT C

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Woodard + Curran Inc.
41 Hutchins Drive
Portland, ME 04102

9590 9403 0801 5215 7686 13

Article Number (Transfer from service label)

7015 1520 0000 1802 1728

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                        ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ red Mail
☐ red Mail Restricted Delivery
   $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053    Domestic Return Receipt

# EXHIBIT D

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

hristopher E. Howard, Esq.
Pierce Atwood LLP
254 Commercial Street
Portland, ME 04101

9590 9403 0801 5215 7686 06

2. Article Number *(Transfer from service label)*

7015 1520 0000 1802 1735

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                    ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery
Charles Bibeau

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053    Domestic Return Receipt

## M   imack County Sheriff's Offic
SHERIFF SCOTT E. HILLIARD
333 Daniel Webster Hwy
Boscawen, NH 03303
Phone: 603-796-6600

WOODARD & CURRAN, INC.
41 HUTCHINS DR
PORTLAND, ME 04102

AFFIDAVIT OF SERVICE

MERRIMACK, SS.                                    4 /26 /16

I, DEPUTY GLENN E LARAMIE JR, this date at *9:52* a.m./p.m., summoned the within named defendant WOODARD & CURRAN, INC. as within commanded by leaving at the office of William M. Gardner, Secretary of State of New Hampshire, its true and lawful Attorney for the service of process under, and by virtue of, Chapter 510:4, New Hampshire Revised Statutes Annotated, as amended, a true and attested copy of this Summons and Complaint, and I paid the Secretary of State ten ($10.00) dollars as his fee for accepting service.

FEES

|           |         |
|-----------|---------|
| Service   | $25.00  |
| Postage   | 1.00    |
| Travel    | 15.00   |
| PD to SOS | 10.00   |
| TOTAL     | $51.00  |

DEPUTY GLENN E LARAMIE JR
Merrimack County Sheriff's Office

 

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Hillsborough Superior Court Northern District
300 Chestnut Street
Manchester NH  03101

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## SUMMONS IN A CIVIL ACTION

Case Name:    **Town of Peterborough v Woodard & Curran, Inc**
Case Number:    **216-2016-CV-00273**

Date Complaint Filed: April 13, 2016

A Complaint has been filed against Woodard & Curran, Inc in this Court. A copy of the Complaint is attached.

**The Court ORDERS that ON OR BEFORE:**

| | |
|---|---|
| June 02, 2016 | Town of Peterborough shall have this Summons and the attached Complaint served upon Woodard & Curran, Inc by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| June 23, 2016 | Town of Peterborough shall file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | Woodard & Curran, Inc must file an Appearance and Answer or other responsive pleading form with this Court.   A copy of the Appearance and Answer or other responsive pleading must be sent to the party listed below and any other party who has filed an Appearance in this matter. |

**Notice to Woodard & Curran, Inc:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:
  Robert Michael Derosier, ESQ

Donahue Tucker & Ciandella PLLC
PO Box 630
Exeter NH  03833-0630

BY ORDER OF THE COURT

April 18, 2016

W. Michael Scanlon
Clerk of Court

(539)

NHJB-2678-S (10/23/2013)

THE STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS.                                                    SUPERIOR COURT
NORTHERN DIVISION

Town of Peterborough
1 Grove Street
Peterborough, New Hampshire 03458

v.

Woodard & Curran, Inc.
41 Hutchins Drive
Portland, Maine 04102

Docket No. _____

### COMPLAINT

This is a civil action for damages sustained by the Town of Peterborough.

### The Parties

1.      The Plaintiff, Town of Peterborough ("Peterborough") is a municipal corporation with an address of 1 Grove Street, Peterborough, New Hampshire 03458.

2.      The Defendant, Woodard & Curran Inc., ("Woodard & Curran") is a corporation organized under the laws of the State of Maine with a principal place of business of 41 Hutchins Drive, Portland, Maine 04102.   Woodard & Curran is an engineering company.

### Jurisdiction and Venue

3.      Jurisdiction is properly conferred by RSA 491:7.

4.      The Court has personal jurisdiction over Woodard & Curran because it conducted business within the State of New Hampshire, and has effected the actions complained of in Peterborough, New Hampshire which is within the jurisdiction of this state.

1

5.      Venue in this Court is proper because Peterborough's principal office and mailing address are in Peterborough, New Hampshire, and because the acts and omissions complained of took place in Hillsborough County.

**Statement of Facts**

6.      Peterborough operates a wastewater treatment facility ("WWTF") which is located in Peterborough on the west side of the Contoocook River.

7.      At some time prior to the date of this lawsuit, Peterborough's WWTF consisted of a pump house and three large treatment lagoons which totaled 22.13 acres of surface area.

8.      In 2001, the New Hampshire Department of Environmental Services ("NHDES") indicated that it and the Environmental Protection Agency ("EPA") would re-open Peterborough's wastewater treatment facility national pollution discharge elimination system permit and adjust the effluent limits for phosphorus and ammonia and possibly total nitrogen.

9.      It was anticipated that NHDES's and the EPA's review of Peterborough's WWTF would result in future effluent limits which would be significantly lower than the effluent limits which then presently existed.

10.      To prepare for this eventuality, Peterborough retained Woodard & Curran to evaluate options for alternative effluent discharge strategies to meet the anticipated new limits.

11.      Peterborough and Woodard & Curran entered into a series of agreements and amendments thereto beginning in 2001 through 2013 to accomplish the tasks of evaluating alternative effluent discharge strategies, upgrading Peterborough's WWTF, and taking offline and properly closing the three existing lagoons.

12.      Peterborough and Woodard & Curran agreed that the project would be completed in two phases.

DONAHUE, TUCKER & CIANDELLA, PLLC — ATTORNEYS AT LAW
OFFICES IN EXETER, PORTSMOUTH AND MEREDITH, NEW HAMPSHIRE — 800-566-0506 — WWW.DTCLAWYERS.COM

13. The first phase would be to upgrade Peterborough's WWTF; and, once the new WWTF came online, the second phase would be to take the three lagoons offline and properly close them so that Peterborough could use this land for other functions.

14. As part of the promised engineering, design, administrative, and consulting services, Woodard & Curran agreed to prepare applications and other associated documents to assist Peterborough in securing grants or loans by federal, state, and other grant or loan agencies.

15. In 2005, Woodard & Curran advised Peterborough that the most cost effective strategy for closing the three lagoons was to excavate the lagoon berms into the lagoons and mix the sludge and berm topsoil together to create a vegetative layer, if the nitrate levels from the monitoring wells were below 10 PPM.

16. Woodard & Curran advised Peterborough that the monitoring wells showed nitrate levels below 10 PPM, so the proposed lagoon closing strategy was appropriate.

17. Woodard & Curran also advised Peterborough that the cost to close all three existing lagoons with minimal grading was $579,000.00.

18. To pay for the new WWTF and to close the three lagoons, the residents of Peterborough approved Article 7 of the Town Warrant in 2006 which had set a gross project cost of $10,320,000.00.

19. Article 7 authorized Peterborough to borrow up to $8,320,000.00, and in addition authorized the selectmen to appropriate or expend from the Town's general fund balance $1,000,000.00, and to receive at least $1,000,000.00 in grant money from the U.S. Department of Agriculture Rural Development ("Rural Development").

20. The total grant from Rural Development and NHDES, following the approval of Article 7, was estimated to be $5,320,000.00.

DONAHUE, TUCKER & CIANDELLA, PLLC — ATTORNEYS AT LAW
OFFICES IN EXETER, PORTSMOUTH AND MEREDITH, NEW HAMPSHIRE - 800-566-0506 - WWW.DTCLAWYERS.COM

21.     After approving Article 7, NHDES updated flow requirements to be handled by the new WWTF and this change resulted in a redesign of the WWTF and additional project costs.

22.     In 2008, Peterborough petitioned the Superior Court to hold a Special Town Meeting to address the new costs estimates for the new WWTF.

23.     At the Special Town Meeting held in September of 2008, the residents of Peterborough approved an increase of $3,023,000.00 for the project which increased the total projected cost of the new WWTF to $13,343,000.00.  To offset this increase in cost, Peterborough updated its requests for grants to Rural Development and NHDES.

24.     Based upon the higher costs for the WWTF, Rural Development increased its grant to Peterborough.  The estimated grant offer totaled $5,688,000.

25.     Once the new WWTF came online in July of 2012, the three existing lagoons were no longer needed and Woodard & Curran presented a formal engineering proposal for the closure of the lagoons in September of 2012.

26.     In September of 2012, Woodard & Curran advised Peterborough that in order to evaluate the most appropriate method for closing the lagoons, data needed to be collected which characterized the sludge quality and volume in the lagoons and the groundwater.

27.     Woodard & Curran advised Peterborough the data collected would support sound decisions on dewatering the impoundments; managing the bottom sludge; odor control; deconstructing the earthen dike system; creation of wetland; and filling and grading the lagoon areas.

28.     In 2012, Woodard & Curran advised Peterborough that it anticipated the wetland creation and the closure of all three lagoons would cost approximately $750,000.00.

4

29.     In its formal engineering proposal to Peterborough in September of 2012, Woodard & Curran stated that the groundwater level and sludge information were important to know for determining how to transition the lagoons to closure.

30.     In its formal engineering proposal provided to Peterborough in September 2012, Woodard & Curran admitted that it did not know the quantity of sludge in each of the three lagoons.

31.     In its formal engineering proposal provided to Peterborough in September 2012, Woodard & Curran admitted that it did not have any readily available data regarding groundwater levels.

32.     In its formal engineering proposal provided to Peterborough in September 2012, Woodard & Curran admitted that, though, it had completed a preliminary analytical review of a sludge sample from 2003, it had not characterized the chemical composition of the sludge.

33.     In February of 2013, Woodard & Curran measured the sludge depth in the three lagoons and collected sludge samples.

34.     Woodard & Curran determined that the average sludge thickness in lagoon one was .1 of a foot; in lagoon two 1.0 foot; and in lagoon three 0.7 of a foot.  The chemical composition of the sludge was also analyzed at that time.

35.     In May of 2013, Woodard & Curran established four monitoring wells near the lagoons for the purpose of estimating groundwater levels.

36.     Based upon the data from the monitoring wells, Woodard & Curran concluded that the lagoons were hydraulically connected to the groundwater table.

37.     Woodard & Curran also stated that its conclusion that the lagoons were hydraulically connected to the groundwater table was supported by the observation that when

5

water was pumped out of lagoons two and three in February 2012, lowering their water levels by four feet, the water level returned in a matter of days.

38.    Woodard & Curran estimated that the water volume which returned over those days was in excess of ten million gallons.

39.    In October of 2013, Woodard & Curran presented its lagoon decommissioning report to Peterborough.

40.    In its lagoon decommissioning report, Woodard & Curran stated that the lagoon fill approach (blending the containment berm soil with sludge and then using the blended material to grade the site) which was first proposed in 2005 and which Peterborough relied upon for setting the costs for the WWTF upgrade project and for passing and amending Article 7, and which Peterborough relied upon for applying to and receiving grant funding from Rural Development and NHDES, was no longer possible because of the subsequent identification of lagoon dewatering difficulty and the regulatory constraints for use of the sludge as a reclamation material.

41.    After receiving Woodard & Curran's lagoon decommissioning report and its recommendations and findings, Peterborough could only, based upon the remaining money available to pay for the upgrade project to the WWTF, close lagoon one.

42.    Woodard & Curran estimated the cost to close lagoon one to be $588,000.00.

43.    In 2014, the process to close lagoon one was started.

44.    After the water in lagoon one was drawn down, it was discovered that the sludge in lagoon one was not one inch thick as Woodard & Curran reported in 2013, but more than twenty inches thick.

6

45.   Peterborough removed that sludge, which is currently stored on site, and filled in lagoon one with approximately 70,000 cubic yards of material.

46.   The cost to close lagoon one was over $1,000,000.00.

47.   At present, lagoons two and three are not closed.

48.   Peterborough is obligated to close lagoons two and three and to remove the sludge which has accumulated in the lagoons.

49.   Peterborough no longer qualifies for Rural Development grant money to pay for a significant portion of the costs for properly closing lagoons two and three.

## COUNT I

### Breach of Contract

50.   Peterborough realleges the allegations contained in the foregoing paragraphs and incorporates those allegations by reference as if fully restated herein.

51.   Woodard & Curran entered into written contracts to provide services to Peterborough and Woodard & Curran breached its contracts.

52.   As a result of Woodard & Curran's breach, Peterborough has suffered and will continue to suffer damages, including but not limited to the inability to receive grant money to help pay for the closure of lagoons two and three, and property damage, for which Woodard & Curran is liable to Peterborough.

53.   WHEREFORE, Peterborough prays that, after trial, a judgment be entered in its favor against Woodard & Curran and that damages be awarded to Peterborough in an amount to be determined at trial, plus interest, attorney fees, and costs all within the jurisdiction of this Court.

7

## COUNT II

### Negligence

54.     Peterborough realleges the allegations in the foregoing paragraphs and incorporates those allegations by reference as if fully restated herein.

55.     Woodard & Curran provided services in connection with the upgrade to Peterborough's WWTF and the closure of the lagoons.

56.     Woodard & Curran had a duty to exercise the applicable standard of care in providing those services and breached its duty.

57.     Peterborough has incurred, and will continue to suffer damage including, but not limited to, property damage and the inability to receive grant money to help pay for the closure of lagoons two and three as a direct and proximate result of such breach.

58.     Woodard & Curran is liable to Peterborough for all damage including, but not limited to, property damage and loss of grant money caused by such breach.

59.     WHEREFORE, Peterborough prays that after trial, a judgment be entered in its favor and against Woodard & Curran, and that damages be awarded to Peterborough in an amount to be determined at trial plus interest, costs, and attorney's fees all within the jurisdictional limits of this Court.

DONAHUE, TUCKER & CIANDELLA, PLLC – ATTORNEYS AT LAW
OFFICES IN EXETER, PORTSMOUTH AND MEREDITH, NEW HAMPSHIRE - 800-566-0506 - WWW.DTCLAWYERS.COM

Respectfully submitted,

TOWN OF PETERBOROUGH
By its attorneys:

DONAHUE, TUCKER & CIANDELLA, PLLC

Date: 12 April 2016                    By: _Robert M. Derosier_

Robert M. Derosier, Esquire
NHB #9979
225 Water Street
Exeter, NH 03833
603-778-0686
rderosier@dtclawyers.com

S:\PA-PL\Peterborough,Town of\Woodard & Curran\litigation\2016 04 12 Complaint.docx

9

RETURN OF SERVICE WITHIN THE STATE OF NEW HAMPSHIRE


MERRIMACK, SS                                          04/26/2016


    I, DEPUTY GLENN E LARAMIE JR, at 10:15am, summoned the within named WOODARD & CURRAN, INC, by leaving at the Office of their Registered Agent, National Corporate Research, located at 63 PLEASANT ST, CONCORD, NH, a copy of an original Summons and Complaint thereon, attested as such by the Hillsborough County Superior Court North, of which the within is a true copy.


FEES

| | |
|---|---|
| Service | $25.00 |
| Postage | 1.00 |
| Travel | 15.00 |

TOTAL        $41.00


DEPUTY GLENN E LARAMIE JR
Merrimack County Sheriff's Office

    

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Hillsborough Superior Court Northern District
300 Chestnut Street
Manchester NH  03101

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## SUMMONS IN A CIVIL ACTION

Case Name:     **Town of Peterborough v Woodard & Curran, Inc**
Case Number:   **216-2016-CV-00273**

Date Complaint Filed: April 13, 2016

A Complaint has been filed against Woodard & Curran, Inc in this Court. A copy of the Complaint is attached.

**The Court ORDERS that ON OR BEFORE:**

| | |
|---|---|
| June 02, 2016 | Town of Peterborough shall have this Summons and the attached Complaint served upon Woodard & Curran, Inc by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law. |
| June 23, 2016 | Town of Peterborough shall file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice. |
| 30 days after Defendant is served | Woodard & Curran, Inc must file an Appearance and Answer or other responsive pleading form with this Court.   A copy of the Appearance and Answer or other responsive pleading must be sent to the party listed below and any other party who has filed an Appearance in this matter. |

**Notice to Woodard & Curran, Inc:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:
  Robert Michael Derosier, ESQ

Donahue Tucker & Ciandella PLLC
PO Box 630
Exeter NH  03833-0630

BY ORDER OF THE COURT

April 18, 2016

W. Michael Scanlon
Clerk of Court

(539)

NHJB-2678-S (10/23/2013)

## THE STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS.                                                  SUPERIOR COURT
NORTHERN DIVISION

Town of Peterborough
1 Grove Street
Peterborough, New Hampshire 03458

v.

Woodard & Curran, Inc.
41 Hutchins Drive
Portland, Maine 04102

Docket No. _____

## COMPLAINT

This is a civil action for damages sustained by the Town of Peterborough.

### The Parties

1.      The Plaintiff, Town of Peterborough ("Peterborough") is a municipal corporation with an address of 1 Grove Street, Peterborough, New Hampshire 03458.

2.      The Defendant, Woodard & Curran Inc., ("Woodard & Curran") is a corporation organized under the laws of the State of Maine with a principal place of business of 41 Hutchins Drive, Portland, Maine 04102.   Woodard & Curran is an engineering company.

### Jurisdiction and Venue

3.      Jurisdiction is properly conferred by RSA 491:7.

4.      The Court has personal jurisdiction over Woodard & Curran because it conducted business within the State of New Hampshire, and has effected the actions complained of in Peterborough, New Hampshire which is within the jurisdiction of this state.

1

5.     Venue in this Court is proper because Peterborough's principal office and mailing address are in Peterborough, New Hampshire, and because the acts and omissions complained of took place in Hillsborough County.

## Statement of Facts

6.     Peterborough operates a wastewater treatment facility ("WWTF") which is located in Peterborough on the west side of the Contoocook River.

7.     At some time prior to the date of this lawsuit, Peterborough's WWTF consisted of a pump house and three large treatment lagoons which totaled 22.13 acres of surface area.

8.     In 2001, the New Hampshire Department of Environmental Services ("NHDES") indicated that it and the Environmental Protection Agency ("EPA") would re-open Peterborough's wastewater treatment facility national pollution discharge elimination system permit and adjust the effluent limits for phosphorus and ammonia and possibly total nitrogen.

9.     It was anticipated that NHDES's and the EPA's review of Peterborough's WWTF would result in future effluent limits which would be significantly lower than the effluent limits which then presently existed.

10.    To prepare for this eventuality, Peterborough retained Woodard & Curran to evaluate options for alternative effluent discharge strategies to meet the anticipated new limits.

11.    Peterborough and Woodard & Curran entered into a series of agreements and amendments thereto beginning in 2001 through 2013 to accomplish the tasks of evaluating alternative effluent discharge strategies, upgrading Peterborough's WWTF, and taking offline and properly closing the three existing lagoons.

12.    Peterborough and Woodard & Curran agreed that the project would be completed in two phases.

2

13.     The first phase would be to upgrade Peterborough's WWTF; and, once the new WWTF came online, the second phase would be to take the three lagoons offline and properly close them so that Peterborough could use this land for other functions.

14.     As part of the promised engineering, design, administrative, and consulting services, Woodard & Curran agreed to prepare applications and other associated documents to assist Peterborough in securing grants or loans by federal, state, and other grant or loan agencies.

15.     In 2005, Woodard & Curran advised Peterborough that the most cost effective strategy for closing the three lagoons was to excavate the lagoon berms into the lagoons and mix the sludge and berm topsoil together to create a vegetative layer, if the nitrate levels from the monitoring wells were below 10 PPM.

16.     Woodard & Curran advised Peterborough that the monitoring wells showed nitrate levels below 10 PPM, so the proposed lagoon closing strategy was appropriate.

17.     Woodard & Curran also advised Peterborough that the cost to close all three existing lagoons with minimal grading was $579,000.00.

18.     To pay for the new WWTF and to close the three lagoons, the residents of Peterborough approved Article 7 of the Town Warrant in 2006 which had set a gross project cost of $10,320,000.00.

19.     Article 7 authorized Peterborough to borrow up to $8,320,000.00, and in addition authorized the selectmen to appropriate or expend from the Town's general fund balance $1,000,000.00, and to receive at least $1,000,000.00 in grant money from the U.S. Department of Agriculture Rural Development ("Rural Development").

20.     The total grant from Rural Development and NHDES, following the approval of Article 7, was estimated to be $5,320,000.00.

3

21.     After approving Article 7, NHDES updated flow requirements to be handled by the new WWTF and this change resulted in a redesign of the WWTF and additional project costs.

22.     In 2008, Peterborough petitioned the Superior Court to hold a Special Town Meeting to address the new costs estimates for the new WWTF.

23.     At the Special Town Meeting held in September of 2008, the residents of Peterborough approved an increase of $3,023,000.00 for the project which increased the total projected cost of the new WWTF to $13,343,000.00.  To offset this increase in cost, Peterborough updated its requests for grants to Rural Development and NHDES.

24.     Based upon the higher costs for the WWTF, Rural Development increased its grant to Peterborough.  The estimated grant offer totaled $5,688,000.

25.     Once the new WWTF came online in July of 2012, the three existing lagoons were no longer needed and Woodard & Curran presented a formal engineering proposal for the closure of the lagoons in September of 2012.

26.     In September of 2012, Woodard & Curran advised Peterborough that in order to evaluate the most appropriate method for closing the lagoons, data needed to be collected which characterized the sludge quality and volume in the lagoons and the groundwater.

27.     Woodard & Curran advised Peterborough the data collected would support sound decisions on dewatering the impoundments; managing the bottom sludge; odor control; deconstructing the earthen dike system; creation of wetland; and filling and grading the lagoon areas.

28.     In 2012, Woodard & Curran advised Peterborough that it anticipated the wetland creation and the closure of all three lagoons would cost approximately $750,000.00.

DONAHUE, TUCKER & CIANDELLA, PLLC — ATTORNEYS AT LAW
OFFICES IN EXETER, PORTSMOUTH AND MEREDITH, NEW HAMPSHIRE - 800-566-0506 - WWW.DTCLAWYERS.COM

29.     In its formal engineering proposal to Peterborough in September of 2012, Woodard & Curran stated that the groundwater level and sludge information were important to know for determining how to transition the lagoons to closure.

30.     In its formal engineering proposal provided to Peterborough in September 2012, Woodard & Curran admitted that it did not know the quantity of sludge in each of the three lagoons.

31.     In its formal engineering proposal provided to Peterborough in September 2012, Woodard & Curran admitted that it did not have any readily available data regarding groundwater levels.

32.     In its formal engineering proposal provided to Peterborough in September 2012, Woodard & Curran admitted that, though, it had completed a preliminary analytical review of a sludge sample from 2003, it had not characterized the chemical composition of the sludge.

33.     In February of 2013, Woodard & Curran measured the sludge depth in the three lagoons and collected sludge samples.

34.     Woodard & Curran determined that the average sludge thickness in lagoon one was .1 of a foot; in lagoon two 1.0 foot; and in lagoon three 0.7 of a foot.  The chemical composition of the sludge was also analyzed at that time.

35.     In May of 2013, Woodard & Curran established four monitoring wells near the lagoons for the purpose of estimating groundwater levels.

36.     Based upon the data from the monitoring wells, Woodard & Curran concluded that the lagoons were hydraulically connected to the groundwater table.

37.     Woodard & Curran also stated that its conclusion that the lagoons were hydraulically connected to the groundwater table was supported by the observation that when

5

water was pumped out of lagoons two and three in February 2012, lowering their water levels by four feet, the water level returned in a matter of days.

38.  Woodard & Curran estimated that the water volume which returned over those days was in excess of ten million gallons.

39.  In October of 2013, Woodard & Curran presented its lagoon decommissioning report to Peterborough.

40.  In its lagoon decommissioning report, Woodard & Curran stated that the lagoon fill approach (blending the containment berm soil with sludge and then using the blended material to grade the site) which was first proposed in 2005 and which Peterborough relied upon for setting the costs for the WWTF upgrade project and for passing and amending Article 7, and which Peterborough relied upon for applying to and receiving grant funding from Rural Development and NHDES, was no longer possible because of the subsequent identification of lagoon dewatering difficulty and the regulatory constraints for use of the sludge as a reclamation material.

41.  After receiving Woodard & Curran's lagoon decommissioning report and its recommendations and findings, Peterborough could only, based upon the remaining money available to pay for the upgrade project to the WWTF, close lagoon one.

42.  Woodard & Curran estimated the cost to close lagoon one to be $588,000.00.

43.  In 2014, the process to close lagoon one was started.

44.  After the water in lagoon one was drawn down, it was discovered that the sludge in lagoon one was not one inch thick as Woodard & Curran reported in 2013, but more than twenty inches thick.

DONAHUE, TUCKER & CIANDELLA, PLLC — ATTORNEYS AT LAW
OFFICES IN EXETER, PORTSMOUTH AND MEREDITH, NEW HAMPSHIRE - 800-566-0506 - WWW.DTCLAWYERS.COM

45.     Peterborough removed that sludge, which is currently stored on site, and filled in lagoon one with approximately 70,000 cubic yards of material.

46.     The cost to close lagoon one was over $1,000,000.00.

47.     At present, lagoons two and three are not closed.

48.     Peterborough is obligated to close lagoons two and three and to remove the sludge which has accumulated in the lagoons.

49.     Peterborough no longer qualifies for Rural Development grant money to pay for a significant portion of the costs for properly closing lagoons two and three.

## COUNT I

### Breach of Contract

50.     Peterborough realleges the allegations contained in the foregoing paragraphs and incorporates those allegations by reference as if fully restated herein.

51.     Woodard & Curran entered into written contracts to provide services to Peterborough and Woodard & Curran breached its contracts.

52.     As a result of Woodard & Curran's breach, Peterborough has suffered and will continue to suffer damages, including but not limited to the inability to receive grant money to help pay for the closure of lagoons two and three, and property damage, for which Woodard & Curran is liable to Peterborough.

53.     WHEREFORE, Peterborough prays that, after trial, a judgment be entered in its favor against Woodard & Curran and that damages be awarded to Peterborough in an amount to be determined at trial, plus interest, attorney fees, and costs all within the jurisdiction of this Court.

7

## COUNT II

### Negligence

54.     Peterborough realleges the allegations in the foregoing paragraphs and incorporates those allegations by reference as if fully restated herein.

55.     Woodard & Curran provided services in connection with the upgrade to Peterborough's WWTF and the closure of the lagoons.

56.     Woodard & Curran had a duty to exercise the applicable standard of care in providing those services and breached its duty.

57.     Peterborough has incurred, and will continue to suffer damage including, but not limited to, property damage and the inability to receive grant money to help pay for the closure of lagoons two and three as a direct and proximate result of such breach.

58.     Woodard & Curran is liable to Peterborough for all damage including, but not limited to, property damage and loss of grant money caused by such breach.

59.     WHEREFORE, Peterborough prays that after trial, a judgment be entered in its favor and against Woodard & Curran, and that damages be awarded to Peterborough in an amount to be determined at trial plus interest, costs, and attorney's fees all within the jurisdictional limits of this Court.

**DONAHUE, TUCKER & CIANDELLA, PLLC – ATTORNEYS AT LAW**
OFFICES IN EXETER, PORTSMOUTH AND MEREDITH, NEW HAMPSHIRE – 800-566-0506 – WWW.DTCLAWYERS.COM

Respectfully submitted,

TOWN OF PETERBOROUGH
By its attorneys:

DONAHUE, TUCKER & CIANDELLA, PLLC

Date: 12 April 2016          By: Robert M. Derosier

Robert M. Derosier, Esquire
NHB #9979
225 Water Street
Exeter, NH 03833
603-778-0686
rderosier@dtclawyers.com

S:\PA-PL\Peterborough,Town of\Woodard & Curran\litigation\2016 04 12 Complaint.docx

9

THE STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS.                                         SUPERIOR COURT
NORTHERN DIVISION

Town of Peterborough
1 Grove Street
Peterborough, New Hampshire 03458

v.

Woodard & Curran, Inc.
41 Hutchins Drive
Portland, Maine 04102

Docket No. _____

## COMPLAINT

This is a civil action for damages sustained by the Town of Peterborough.

### The Parties

1.      The Plaintiff, Town of Peterborough ("Peterborough") is a municipal corporation

with an address of 1 Grove Street, Peterborough, New Hampshire 03458.

2.      The Defendant, Woodard & Curran Inc., ("Woodard & Curran") is a corporation

organized under the laws of the State of Maine with a principal place of business of 41 Hutchins

Drive, Portland, Maine 04102.   Woodard & Curran is an engineering company.

### Jurisdiction and Venue

3.      Jurisdiction is properly conferred by RSA 491:7.

4.      The Court has personal jurisdiction over Woodard & Curran because it conducted

business within the State of New Hampshire, and has effected the actions complained of in

Peterborough, New Hampshire which is within the jurisdiction of this state.

1

5.      Venue in this Court is proper because Peterborough's principal office and mailing address are in Peterborough, New Hampshire, and because the acts and omissions complained of took place in Hillsborough County.

**Statement of Facts**

6.      Peterborough operates a wastewater treatment facility ("WWTF") which is located in Peterborough on the west side of the Contoocook River.

7.      At some time prior to the date of this lawsuit, Peterborough's WWTF consisted of a pump house and three large treatment lagoons which totaled 22.13 acres of surface area.

8.      In 2001, the New Hampshire Department of Environmental Services ("NHDES") indicated that it and the Environmental Protection Agency ("EPA") would re-open Peterborough's wastewater treatment facility national pollution discharge elimination system permit and adjust the effluent limits for phosphorus and ammonia and possibly total nitrogen.

9.      It was anticipated that NHDES's and the EPA's review of Peterborough's WWTF would result in future effluent limits which would be significantly lower than the effluent limits which then presently existed.

10.     To prepare for this eventuality, Peterborough retained Woodard & Curran to evaluate options for alternative effluent discharge strategies to meet the anticipated new limits.

11.     Peterborough and Woodard & Curran entered into a series of agreements and amendments thereto beginning in 2001 through 2013 to accomplish the tasks of evaluating alternative effluent discharge strategies, upgrading Peterborough's WWTF, and taking offline and properly closing the three existing lagoons.

12.     Peterborough and Woodard & Curran agreed that the project would be completed in two phases.

13.     The first phase would be to upgrade Peterborough's WWTF; and, once the new WWTF came online, the second phase would be to take the three lagoons offline and properly close them so that Peterborough could use this land for other functions.

14.     As part of the promised engineering, design, administrative, and consulting services, Woodard & Curran agreed to prepare applications and other associated documents to assist Peterborough in securing grants or loans by federal, state, and other grant or loan agencies.

15.     In 2005, Woodard & Curran advised Peterborough that the most cost effective strategy for closing the three lagoons was to excavate the lagoon berms into the lagoons and mix the sludge and berm topsoil together to create a vegetative layer, if the nitrate levels from the monitoring wells were below 10 PPM.

16.     Woodard & Curran advised Peterborough that the monitoring wells showed nitrate levels below 10 PPM, so the proposed lagoon closing strategy was appropriate.

17.     Woodard & Curran also advised Peterborough that the cost to close all three existing lagoons with minimal grading was $579,000.00.

18.     To pay for the new WWTF and to close the three lagoons, the residents of Peterborough approved Article 7 of the Town Warrant in 2006 which had set a gross project cost of $10,320,000.00.

19.     Article 7 authorized Peterborough to borrow up to $8,320,000.00, and in addition authorized the selectmen to appropriate or expend from the Town's general fund balance $1,000,000.00, and to receive at least $1,000,000.00 in grant money from the U.S. Department of Agriculture Rural Development ("Rural Development").

20.     The total grant from Rural Development and NHDES, following the approval of Article 7, was estimated to be $5,320,000.00.

3

21.     After approving Article 7, NHDES updated flow requirements to be handled by the new WWTF and this change resulted in a redesign of the WWTF and additional project costs.

22.     In 2008, Peterborough petitioned the Superior Court to hold a Special Town Meeting to address the new costs estimates for the new WWTF.

23.     At the Special Town Meeting held in September of 2008, the residents of Peterborough approved an increase of $3,023,000.00 for the project which increased the total projected cost of the new WWTF to $13,343,000.00.  To offset this increase in cost, Peterborough updated its requests for grants to Rural Development and NHDES.

24.     Based upon the higher costs for the WWTF, Rural Development increased its grant to Peterborough.  The estimated grant offer totaled $5,688,000.

25.     Once the new WWTF came online in July of 2012, the three existing lagoons were no longer needed and Woodard & Curran presented a formal engineering proposal for the closure of the lagoons in September of 2012.

26.     In September of 2012, Woodard & Curran advised Peterborough that in order to evaluate the most appropriate method for closing the lagoons, data needed to be collected which characterized the sludge quality and volume in the lagoons and the groundwater.

27.     Woodard & Curran advised Peterborough the data collected would support sound decisions on dewatering the impoundments; managing the bottom sludge; odor control; deconstructing the earthen dike system; creation of wetland; and filling and grading the lagoon areas.

28.     In 2012, Woodard & Curran advised Peterborough that it anticipated the wetland creation and the closure of all three lagoons would cost approximately $750,000.00.

DONAHUE, TUCKER & CIANDELLA, PLLC – ATTORNEYS AT LAW
OFFICES IN EXETER, PORTSMOUTH AND MEREDITH, NEW HAMPSHIRE – 800-566-0506 – WWW.DTCLAWYERS.COM

29.     In its formal engineering proposal to Peterborough in September of 2012, Woodard & Curran stated that the groundwater level and sludge information were important to know for determining how to transition the lagoons to closure.

30.     In its formal engineering proposal provided to Peterborough in September 2012, Woodard & Curran admitted that it did not know the quantity of sludge in each of the three lagoons.

31.     In its formal engineering proposal provided to Peterborough in September 2012, Woodard & Curran admitted that it did not have any readily available data regarding groundwater levels.

32.     In its formal engineering proposal provided to Peterborough in September 2012, Woodard & Curran admitted that, though, it had completed a preliminary analytical review of a sludge sample from 2003, it had not characterized the chemical composition of the sludge.

33.     In February of 2013, Woodard & Curran measured the sludge depth in the three lagoons and collected sludge samples.

34.     Woodard & Curran determined that the average sludge thickness in lagoon one was .1 of a foot; in lagoon two 1.0 foot; and in lagoon three 0.7 of a foot.  The chemical composition of the sludge was also analyzed at that time.

35.     In May of 2013, Woodard & Curran established four monitoring wells near the lagoons for the purpose of estimating groundwater levels.

36.     Based upon the data from the monitoring wells, Woodard & Curran concluded that the lagoons were hydraulically connected to the groundwater table.

37.     Woodard & Curran also stated that its conclusion that the lagoons were hydraulically connected to the groundwater table was supported by the observation that when

DONAHUE, TUCKER & CIANDELLA, PLLC – ATTORNEYS AT LAW
OFFICES IN EXETER, PORTSMOUTH AND MEREDITH, NEW HAMPSHIRE – 800-566-0506 – WWW.DTCLAWYERS.COM

water was pumped out of lagoons two and three in February 2012, lowering their water levels by four feet, the water level returned in a matter of days.

38. Woodard & Curran estimated that the water volume which returned over those days was in excess of ten million gallons.

39. In October of 2013, Woodard & Curran presented its lagoon decommissioning report to Peterborough.

40. In its lagoon decommissioning report, Woodard & Curran stated that the lagoon fill approach (blending the containment berm soil with sludge and then using the blended material to grade the site) which was first proposed in 2005 and which Peterborough relied upon for setting the costs for the WWTF upgrade project and for passing and amending Article 7, and which Peterborough relied upon for applying to and receiving grant funding from Rural Development and NHDES, was no longer possible because of the subsequent identification of lagoon dewatering difficulty and the regulatory constraints for use of the sludge as a reclamation material.

41. After receiving Woodard & Curran's lagoon decommissioning report and its recommendations and findings, Peterborough could only, based upon the remaining money available to pay for the upgrade project to the WWTF, close lagoon one.

42. Woodard & Curran estimated the cost to close lagoon one to be $588,000.00.

43. In 2014, the process to close lagoon one was started.

44. After the water in lagoon one was drawn down, it was discovered that the sludge in lagoon one was not one inch thick as Woodard & Curran reported in 2013, but more than twenty inches thick.

6

45.   Peterborough removed that sludge, which is currently stored on site, and filled in lagoon one with approximately 70,000 cubic yards of material.

46.   The cost to close lagoon one was over $1,000,000.00.

47.   At present, lagoons two and three are not closed.

48.   Peterborough is obligated to close lagoons two and three and to remove the sludge which has accumulated in the lagoons.

49.   Peterborough no longer qualifies for Rural Development grant money to pay for a significant portion of the costs for properly closing lagoons two and three.

<u>COUNT I</u>

**Breach of Contract**

50.   Peterborough realleges the allegations contained in the foregoing paragraphs and incorporates those allegations by reference as if fully restated herein.

51.   Woodard & Curran entered into written contracts to provide services to Peterborough and Woodard & Curran breached its contracts.

52.   As a result of Woodard & Curran's breach, Peterborough has suffered and will continue to suffer damages, including but not limited to the inability to receive grant money to help pay for the closure of lagoons two and three, and property damage, for which Woodard & Curran is liable to Peterborough.

53.   WHEREFORE, Peterborough prays that, after trial, a judgment be entered in its favor against Woodard & Curran and that damages be awarded to Peterborough in an amount to be determined at trial, plus interest, attorney fees, and costs all within the jurisdiction of this Court.

7

## COUNT II

### Negligence

54.    Peterborough realleges the allegations in the foregoing paragraphs and incorporates those allegations by reference as if fully restated herein.

55.    Woodard & Curran provided services in connection with the upgrade to Peterborough's WWTF and the closure of the lagoons.

56.    Woodard & Curran had a duty to exercise the applicable standard of care in providing those services and breached its duty.

57.    Peterborough has incurred, and will continue to suffer damage including, but not limited to, property damage and the inability to receive grant money to help pay for the closure of lagoons two and three as a direct and proximate result of such breach.

58.    Woodard & Curran is liable to Peterborough for all damage including, but not limited to, property damage and loss of grant money caused by such breach.

59.    WHEREFORE, Peterborough prays that after trial, a judgment be entered in its favor and against Woodard & Curran, and that damages be awarded to Peterborough in an amount to be determined at trial plus interest, costs, and attorney's fees all within the jurisdictional limits of this Court.

DONAHUE, TUCKER & CIANDELLA, PLLC — ATTORNEYS AT LAW
OFFICES IN EXETER, PORTSMOUTH AND MEREDITH, NEW HAMPSHIRE - 800-566-0506 - WWW.DTCLAWYERS.COM

Respectfully submitted,

TOWN OF PETERBOROUGH
By its attorneys:

DONAHUE, TUCKER & CIANDELLA, PLLC

Date: 12 April 2016          By: _____
                                  Robert M. Derosier, Esquire
                                  NHB #9979
                                  225 Water Street
                                  Exeter, NH 03833
                                  603-778-0686
                                  rderosier@dtclawyers.com

S:\PA-PL\Peterborough,Town of\Woodard & Curran\litigation\2016 04 12 Complaint.docx

DONAHUE, TUCKER & CIANDELLA, PLLC – ATTORNEYS AT LAW
OFFICES IN EXETER, PORTSMOUTH AND MEREDITH, NEW HAMPSHIRE – 800-566-0506 – WWW.DTCLAWYERS.COM

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### SUPERIOR COURT

Hillsborough Superior Court Northern District
300 Chestnut Street
Manchester NH 03101

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## SUMMONS IN A CIVIL ACTION

Case Name:    **Town of Peterborough v Woodard & Curran, Inc**
Case Number:  **216-2016-CV-00273**

Date Complaint Filed: April 13, 2016
A Complaint has been filed against Woodard & Curran, Inc in this Court. A copy of the Complaint is attached.

**The Court ORDERS that ON OR BEFORE:**

June 02, 2016     Town of Peterborough shall have this Summons and the attached Complaint served upon Woodard & Curran, Inc by in hand or by leaving a copy at his/her abode, or by such other service as is allowed by law.

June 23, 2016     Town of Peterborough shall file the return(s) of service with this Court. Failure to do so may result in this action being dismissed without further notice.

30 days after Defendant is served     Woodard & Curran, Inc must file an Appearance and Answer or other responsive pleading form with this Court. A copy of the Appearance and Answer or other responsive pleading must be sent to the party listed below and any other party who has filed an Appearance in this matter.

**Notice to Woodard & Curran, Inc:** If you do not comply with these requirements you will be considered in default and the Court may issue orders that affect you without your input.

Send copies to:
 Robert Michael Derosier, ESQ

Donahue Tucker & Ciandella PLLC
PO Box 630
Exeter NH 03833-0630

BY ORDER OF THE COURT

April 18, 2016

W. Michael Scanlon
Clerk of Court

(539)

NHJB-2678-S (10/23/2013)